FILED

2007 Oct-03  AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| **Mitchell Hungerpiller and Patricia Hungerpiller,** | ) | |
| **individually and on behalf of a class of similarly** | ) | |
| **situated persons;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CV: _____** |
| **v.** | ) | |
| | ) | |
| **RC2 CORPORATION, a Delaware Corporation, and** | ) | |
| **LEARNING CURVE BRANDS, INC., a Delaware** | ) | |
| **Corporation, each separately and on behalf of all** | ) | **Jury Trial Demanded** |
| **other entities similarly situated,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

The Plaintiffs, by and through their attorneys, bring this class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the <u>Federal Rules of Civil Procedure</u>. They bring this class action on their own behalf and on behalf of all persons who purchased toys which were designed, manufactured, imported, marketed, distributed or sold by RC2 Corporation or Learning Curve Brands, Inc. and/or purchased toys from any other entities (the "Defendant Class"), between January 2005 and the present (the "Relevant Period"), which contained lead paint and/or design flaws and were subsequently recalled or are subject to recall.

## PARTIES

1.      Defendant RC2 Corporation ("RC2"), is a Delaware corporation doing business within the State of Alabama and throughout the entire United States. RC2 engages in the design, production, manufacturing, importing and marketing of toys, collectibles and infant, toddler and pre-school products. The toys are then marketed and sold under the Learning Curve Brands, Inc. RC2 maintains a website that reaches throughout the world. RC2 is the parent company for Learning

Curve Brands, Inc.  RC2's position in the toy market supports and substantiates their appointment as Defendant Class representatives.

2.     Defendant Learning Curve Brands, Inc. ("Learning Curve") is a Delaware corporation doing business within the State of Alabama and throughout the entire United States. Learning Curve is the subsidiary of RC2.  Learning Curve is the self-proclaimed seller of "developmental toys that engage children, and provide parents with peace of mind, knowing their children are being inspired and enlightened by safe and quality playthings."  Learning Curve sells toy products through numerous channels including chain retailers, specialty retailers, wholesalers and sales made directly to consumers, including consumers within the State of Alabama.  Learning Curve's position in the toy market supports and substantiates their appointment as Defendant Class representatives.

3.     Plaintiff, Mitchell Hungerpiller ("Mr. Hungerpiller"), has been an adult resident of Jefferson County, Alabama during the Relevant Period.  Mr. Hungerpiller purchased and owns the Olive Green Sodor Cargo Box recalled by RC2.   Mr. Hungerpiller's 9 year old and 4 year old children have played with the recalled toys.

4.     Plaintiff, Patricia Hungerpiller ("Mrs. Hungerpiller"), has been an adult resident of Jefferson County, Alabama during the Relevant Period.  Mrs. Hungerpiller purchased and owns the Olive Green Sodor Cargo Box recalled by RC2.  Mrs. Hungerpiller's 9 year old and 4 year old children have played with the recalled toys.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction in this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in

2

controversy exceeds $5,000,000.00, exclusive of interest and costs, the Plaintiff Class is estimated to be in the tens of thousands or more and this is a class action in which some members of the Plaintiff Class are citizens of states different than Defendants.

6.    This Court has personal jurisdiction over Defendants because they do business in the State of Alabama, have sufficient minimums contacts with the State of Alabama and otherwise avail themselves of the markets in Alabama through the promotion, marketing and sale of its products in Alabama to render exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this Northern District of Alabama, Southern Division because the recalled toys were purchased in this judicial district and division and many of the acts and/or occurrences giving rise to this action occurred in this judicial district and division.

## CLASS CERTIFICATION

### PLAINTIFF CLASS

8.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following classes and subclasses (collectively "Plaintiff Class"):

a.    All citizens in the United States ("Nationwide Class") who purchased any of the toys which were designed, manufactured, imported, marketed, distributed or sold by the Defendants during the Relevant Period, which contain lead paint and/or design flaws and were subsequently recalled or are subject to recall.

(i).    All citizens of Alabama ("Alabama Class") who purchased any of the toys which were designed, manufactured, imported, marketed, distributed or

sold by the Defendants during the Relevant Period, which contain lead paint and/or design flaws and were subsequently recalled or are subject recall.

9.      Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court.  The identity and exact number of Class members is unknown but is estimated to be in the tens of thousands or more.

10.     Plaintiffs' claims are typical of those of other Plaintiff Class members, all of whom have suffered harm due to the Defendants' uniform course of conduct.

11.     Plaintiffs are  members of the Plaintiff Nationwide Class.

12.     Plaintiffs are members of the Plaintiff Alabama Class.

13.     There are substantial questions of law and fact common to all members of the Plaintiff Class which control this litigation and predominate over any individual issues.  These common issues include, but are not limited to:

      a.      Whether the toys were unmerchantable;

      b.      Whether the toys contained a design flaw;

      c.      Whether the toys were inherently dangerous or hazardous;

      d.      Whether the toys contained lead paint;

      e.      Whether Plaintiffs and members of the Plaintiff Class purchased the recalled toys;

      f.      Whether Defendants and members of the Defendant Class are refusing to reimburse Plaintiffs and the members of the Plaintiff Class for the cost of the products;

4

g.     Whether Plaintiffs and members of the Plaintiff Class are entitled to relief under the Alabama Extended Manufacturer's Liability Doctrine and/or similar consumer protection statutes of other states;

h.     Whether Defendants and members of the Defendant Class have breached an implied warranty as to the nature of toys it manufactured, marketed, imported, distributed and sold;

i.     Whether Defendants and members of the Defendant Class have breached an express warranty as to the nature of toys it manufactured, marketed, imported, distributed and sold;

j.     Whether, as a result of the Defendants' and members of the Defendant Class's negligent or reckless conduct, children have been exposed to a known hazardous substance;

k.     Whether Defendants and members of the Defendant Class should be held strictly liable for placing hazardous toys into the stream of commerce;

l.     Whether Defendants and members of the Defendant Class have been unjustly enriched; and

m.     Whether Plaintiffs and members of the Plaintiff Class are entitled to declaratory relief.

14.     Defendants and members of the Defendant Class's conduct is such that it is appropriate that there be declaratory and final injunctive relief to declare unlawful and to enjoin its conduct with respect to the Plaintiff Class as a whole.

15.     A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

a.     Without a class action, the Plaintiff Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

b.     Given (1) the substantive complexity of this litigation; (2) the size of individual Plaintiff Class member's claims; and (3) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

c.     This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision;

d.     Inferences and presumptions of materiality and reliance are available to obtain          class-wide determinations of those elements within the Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants and members of the Defendant Class's liability, the Court can efficiently determine the  claims of the individual Plaintiff Class members; and this action present no difficulty that would impede the Court's management of it as a class action, and a class action is the best available means by which members of the Plaintiff Class can seek legal redress for the harm caused them by the Defendants and members of the Defendant Class.

6

16.     Plaintiffs are represented by experienced and able counsel who have expertise in the areas of product liability, tort law, trial practice, and class action representation.

DEFENDANT CLASS

17.     Plaintiffs also seek to maintain this action against any other entity which were designed, manufactured, imported, marketed, distributed or sold toys to the Plaintiffs or members of the Plaintiff Class which were subsequently recalled or are subject to recall due to lead paint and/or design flaws during the Relevant Period.

18.     Defendants RC2 and Learning Curve are adequate Defendant Class Representatives and will fairly represent the Defendant Class.

19.     There are questions of fact and/or law that are common to the Defendant Class which predominate over any individual questions of fact and/or law.

20.     All Defendants in the defined Defendant Class designed, manufactured, imported, marketed, distributed or sold toys which were subsequently recalled or are subject to recall due to lead paint and/or design flaws during the Relevant Period.

21.     Defendants RC2 and Learning Curve are members of the Defendant Class.

22.     Defendants RC2 and Learning Curve's defenses are typical of those of other members of the Defendant Class, all of whom designed, manufactured, imported, marketed, distributed or sold toys which were subsequently recalled or are subject to recall due to lead paint and/or design flaws.

23.     There are numerous and substantial questions of law and fact common to all of the members of the Defendant Class which control this litigation and predominate over any individual

7

issues. The common issues include, but are not limited to, the common issues previously cited in the pleading and the following additional issues:

  a.    Whether Defendant Class members designed, manufactured, imported, marketed, distributed or sold toys;

  b.    Whether said toys contain lead paint and/or design flaws;

  c.    Whether the said toys were subsequently recalled or are subject to recall due to lead paint and/or design flaws; and

  d.    Whether the Defendants and members of the Defendant Class violated federal, state or local regulations in the design, manufacture, import and/or distribution of said toys.

24.    Class certification is appropriate in this action because the common issues of fact and law alleged herein are common to the class members and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this ongoing controversy.

## STATEMENT OF FACTS

25.    This action is brought by the Plaintiffs, individually and in their representative capacities, as a class action on their own behalf and on behalf of all others similarly situated, under the provisions of the Federal Rules of Civil Procedure, specifically subdivisions (a), (b)(2), (b)(3) and (c) of Rule 23.

26.    Learning Curve is the self-proclaimed seller of "developmental toys that engage children, and provide parents with peace of mind, knowing their children are being inspired and enlightened by safe and quality playthings."

8

27.    Other members of the Defendant Class have issued similar statements or assurances regarding the quality and safety of their toys.

28.    The Defendants have built their marketing campaign around assuring parents and care givers that their toys are safe for children.

29.    Upon information and belief, the Defendants and members of the Defendant Class failed to timely notify the CPSC and the public of the hazardous nature of its toys.  The CPSC is currently investigating Defendants' failure to properly disclose the dangers of its products.

30.    Defendants and members of the Defendant Class have previously been investigated and fined by the CPSC for other failures concerning the safety of its toys.

31.    Defendants have not offered to reimburse Plaintiffs, or other members of the Plaintiff Class for the costs of the recalled toys and have only offered purchasers of the hazardous toys the ability to obtain a voucher for further products manufactured and marketed by the Defendants.

32.    Defendants' offer is inadequate and fails to compensate Plaintiffs and other members of the Plaintiff Class for their damages or make them whole.

33.    The Defendants and members of the Defendant Class have acted, or refused to act, on grounds generally applicable to the Plaintiff Class, thereby making relief, with respect to the Class as a whole, appropriate.

<u>LEAD PAINT</u>

34.    Defendants have manufactured or caused to be manufactured, marketed, imported and/or distributed, toys designed for young children and infants using surface paint containing lead, a human toxin which is particularly harmful to children.

35.     It is foreseeable and expected that young children and infants will lick, suck, bite and chew on the toys, and consequently ingest paint chips containing lead paint.

36.     Contact with and exposure to lead paint can cause serious disorders in children, including speech delay, hyperactivity, attention deficit disorder, learning disabilities, behavioral disorders, neurological and renal damage, stunted growth, anemia and hearing loss.

37.     At increasingly high levels of exposure, a child may suffer kidney damage, mental retardation and brain damage, fall into a coma and even die from lead poisoning.

38.     The substance lead builds up in a person's system and even small amounts can remain in the person's body and can add on to other sources of lead resulting in harmful levels in a person's system.

39.     According to the National Safety Council, the lead dust equivalent of a single grain of salt is sufficient, if ingested, for a child to register an elevated blood level.

40.     The U.S. Consumer Product Safety Commission ("CPSC") has declared "[t]oys and other articles intended for use by children that bear 'lead-containing paint'" are "banned hazardous products."

41.     On June 13, 2007, RC2 issued a recall of toys manufactured, marketed and/or distributed by Defendants that contained lead paint.

42.     On September 26, 2007, RC2 issued two additional recalls of toys manufactured, marketed and/or distributed by Defendants that contained lead paint.

43.     Other members of the Defendant Class have announced recalls during the Relevant Period of millions of toys that contained lead paint.

44.    As a result of Defendants and members of the Defendant Class designing, manufacturing, marketing, importing and distribution of toys that contain lead paint, Plaintiffs and members of the Plaintiff Class have been exposed to a known hazardous substance and are at an increased risk of being poisoned by lead.

<u>DESIGN DEFECTS</u>

45.    Defendants have manufactured or caused to be manufactured, marketed, imported and/or distributed, toys designed for young children and infants which contain a design defect that renders the toys particularly harmful to children.

46.    In November 2006, RC2 announced a recall of toys that contained a design defect which allowed small components of toys to fall out and potentially be swallowed or aspirated by young children.

47.    Other members of the Defendant Class have announced recalls during the Relevant Period of millions of toys that contained design defects.

48.    It is foreseeable and expected that young children and infants will lick, suck, bite and chew on the toys, and consequently ingest hazardous parts of toys.

49.    As a result of Defendants and members of the Defendant Class designing, manufacturing, marketing, importing and distribution of toys which contain a design defect that renders the toys particularly harmful to children, Plaintiffs and members of the Plaintiff Class have suffered damage.

**<u>CLAIMS FOR RELIEF</u>**

11

## COUNT ONE - (Violations of Consumer Protection Laws)

50.    Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

51.    This is a claim for violation of Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and those other state consumer protection statutes which are in all material respects similar to the AEMLD.

52.    At all times material to this action, the Defendants have engaged in the business of selling, distributing, marketing, designing and promoting toys for young children and infants.

53.    The Defendants and members of the Defendant Class sold and distributed toys in a defective condition which were unreasonably dangerous to the ultimate user and consumer.

54.    The toys were expected to and did reach the user and consumer without substantial change in the condition in which they were sold or distributed.

55.    The toys were subjected to recalls as a result of the Defendants and members of the Defendant Class's use of lead paint, a banned hazardous product and/or the presence of a design defect which rendered the toys especially dangerous to young children.

56.    At all times relevant to this action, there existed safer methods and products for the manufacturing of toys.

57.    Plaintiffs have suffered injury and damage as a result of Defendants and members of the Defendant Class's design, manufacture, import and distribution of toys which were in a defective condition and unreasonably dangerous to the Plaintiffs and members of the Plaintiff Class.

58.    By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## COUNT TWO (Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose)

59.    Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

60.    Defendants and members of the Defendant Class impliedly warranted to Plaintiffs, and members of the Plaintiff Class, that their products were fit for their ordinary purpose as toys for young children and infants.

61.    Defendants and members of the Defendant Class breached the implied warranty of merchantability by designing, manufacturing, importing, marketing, distributing and selling toys that are hazardous to young children and infants and which cannot safely be used for their ordinary purpose.

62.    The recalled toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

63.    Defendants and members of the Defendant Class knew, or should have known, that the toys were not safe for children and did not meet the capabilities as marketed and represented.

64.    As a proximate result of the Defendants and members of the Defendant Class's breach of implied warranties, Plaintiffs and members of the Plaintiff Class have suffered injury and damages.

65.    By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## COUNT THREE (Breach of Express Warranty)

66.    Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

67.     The Defendants and members of the Defendant Class have built their marketing campaign around assuring parents and care givers that its toys are safe for children.

68.     The assurance of safety and quality became part of the basis of the bargain and created an express warranty that the toys designed, manufactured, imported, marketed, distributed and sold by the Defendants, and members of the Defendant Class, were safe for young children and infants.

69.     Defendants and members of the Defendant Class expressly warranted that its toys were designed and manufactured to conform will all safety requirements under U.S. federal and other applicable laws and regulations and that they were periodically reviewed and approved by independent safety testing laboratories.

70.     Defendants and members of the Defendant Class have breached their express warranty by designing, manufacturing, marketing, distributing and selling toys that contained lead-based paint and/or design defects that are hazardous to young children and infants.  Defendants and members of the Defendant Class knew, or should have known, the toys were not safe for children and did not meet the capabilities as marketed and represented.

71.     As a proximate result of the Defendants and members of the Defendant Class's breach of express warranty, Plaintiffs and members of the Plaintiff Class have suffered injury and damages.

72.     By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## COUNT FOUR (Negligence)

73.     Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

14

74.     The Defendants and members of the Defendant Class owed a duty to the Plaintiffs and members of the Plaintiff Class to use reasonable care in the manufacturing, design, inspection and distribution of its toys for young children and infants.

75.     The Defendants and members of the Defendant Class had a duty to properly supervise, train and monitor its respective employees and contract manufacturers, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, design, distribution, inspection, storage and sale of toys for young children and infants.

76.     The Defendants and members of the Defendant Class had a duty to use supplies and materials that were reasonably safe and complied with federal, state and local laws.

77.     The Defendants and members of the Defendant Class had a duty to exercise reasonable care to design, manufacture, test, inspect, distribute and sell reasonably safe toys for young children and infants.

78.     The Defendants and members of the Defendant Class were negligent, careless, reckless, grossly negligent and wanton in the design, manufacture, inspection, testing, distribution and sale of their toys in all the following respects:

> a.     By manufacturing, inspecting, marketing, distributing, selling and/or supplying the toys in such a way that young children and infants using the product would be subjected to unreasonable danger;
>
> b.     By failing to test the toys to ensure they were not hazardous;
>
> c.     By failing to warn users and care givers of young children and infants that the toys contained lead paint or design defects which could be harmful to children;

d.    By failing to utilize a proper manufacturing process which would eliminate the possibility of lead paint reaching the end user;

e.    By failing to utilize a proper manufacturing process which would eliminate the possibility of small components falling out of the toys;

f.    By failing to hire, train, supervise and monitor such workers at its plant to ensure that the manufacturing and distribution process would be handled in a safe manner;

g.    By placing and permitting the placement of the toys into the stream of commerce when the Defendants knew or should have known of the hazardous nature of the toys; and

h.    By failing to use due care under the circumstances.

79.    As a proximate result of the negligence of the Defendants and the members of the Defendant Class, Plaintiffs and members of the Plaintiff Class have suffered injury and damages.

80.    By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## COUNT FIVE (Strict Liability)

81.    Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

82.    The toys distributed by the Defendants and members of the Defendant Class were designed, manufactured, imported, distributed and sold in a defective and unreasonably dangerous condition for their ordinary and expected use at the time they left the Defendants and members of the Defendant Class's control.

83.    The recalled toys were sold and distributed to Plaintiffs and members of the Plaintiff Class without any change in their defective condition.

84.    The Defendants and members of the Defendant Class placed the toys into the stream of commerce expecting them to reach users and consumers without substantial change to their condition.

85.    The Defendants and members of the Defendant Class owed a duty of care to the Plaintiffs and the Plaintiff Class to design, manufacture and/or sell toys that were fit for use by children and infants and were reasonably safe and free of lead paint and design defects and to ensure that products they purchased from other sources were similarly safe and free of lead paint and design defects.

86.    The Defendants and members of the Defendant Class breached their duty to the Plaintiffs and members of the Plaintiff Class and placed an unreasonably dangerous product into the stream of commerce.

87.    Plaintiffs and Plaintiff Class suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the toys which were designed, manufactured, imported, distributed and/or sold by Defendants and members of the Defendant Class.

88.    By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## COUNT SIX (Unjust Enrichment)

89.    Plaintiffs hereby adopt and incorporate by reference all of the above allegations.

90.    Defendants and members of the Defendant Class received from Plaintiffs and certain members of the Plaintiff Class, monies from their purchase of toys which contained lead paint and/or design defects and were subsequently recalled.

91.    Plaintiffs and certain members of the Plaintiff Class have conferred a benefit on Defendants and members of the Defendant Class.

92.    Defendants and members of the Defendant Class have knowledge of this benefit and have accepted and retained the benefit.

93.    Defendants and members of the Defendant Class will be unjustly enriched if they are allowed to retain such monies, and each Plaintiff and member of the Plaintiff Class is entitled to an amount equal to the amount each member enriched the Defendants.

94.    By reason of the foregoing, Plaintiffs and members of the Plaintiff Class have been damaged by the Defendants and members of the Defendant Class and all relief set forth in the Ad Damnum clause below is due.

## AD DAMNUM CLAUSE

**WHEREFORE**, the Plaintiffs and members of the Plaintiff Class pray that they be awarded compensatory and punitive damages and recover judgment against Defendants and members of the Defendant Class for the following:

1.    Damages in the amount of monies paid for the recalled toys and the cost of medical testing for lead poisoning;

2.    Damages in the amount of monies paid, or to be paid, for lead testing of the class members handling the recalled toys;

18

3.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

4.      Pre-judgment and post-judgment interest on such monetary relief;

5.      Other appropriate injunctive relief;

6.      Appropriate attorney fees and costs and expenses incurred in connection with the litigation of this matter;

7.      Certification of the action as a Class Action pursuant to <u>Federal Rules of Civil Procedure</u>, Rules (b)(2) and (b)(3), and appointment of Plaintiffs as Class Representatives and Plaintiff's counsel of record as Class Counsel;

8.      An order declaring the Defendants' conduct, with respect to the manufacture, design, and distribution of the toys, unlawful and in contempt of their duties under the law; and

9.      For such other and further relief as this Court may deem just proper, and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Filed this the 1st day of October 2007.


HENINGER GARRISON DAVIS, LLC

By: <u>/s/ W. Lewis Garrison, Jr.</u>
W. Lewis Garrison
Gayle L. Douglas
Counsel for Plaintiffs
2224 First Avenue North
Birmingham, Alabama 35203
(205) 326-3336

19

Please serve Defendants by Certified Mail:

RC2 Corporation
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Learning Curve Brands, Inc.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801